STATE BOARD OF EXAMINERS FOR ARCHITECTS AND EN-
GINEERS *v.* RODGERS.

(*Nashville.* December Term, 1933.)

Opinion filed March 31, 1934.

BAILEY & DAVIES, of Nashville, for appellant.

Roy H. Beeler, Attorney-General, and McConnico, Hatcher, Walker, Waller & Hooker, of Nashville, for appellee.

Mr. Justice Swiggart delivered the opinion of the Court.

Proceeding under the authority and direction of Code, sections 9316, 9317, the complainants sue to enjoin the defendant "from practicing architecture," without complying with the statute, Code, sections 7098-7112, requiring examination and registration of architects.

The chancellor found against the defendant's contention that his plan and method of business did not amount to the practice of architecture, and enjoined him, in general terms, from "practicing architecture" in this State until he shall have been duly registered and certified. The defendant's appeal to the Court of Appeals was transferred by that court to the Supreme Court, because in his answer and assignments of error the defendant questions the constitutionality of the applicable sections of the Code.

The defendant characterizes his business as that of a decorator and designer. His work and talent, as he describes them, are more nearly those of an artist than of a builder of structures. His interest is in the realm of aesthetics. When applied to the building trade, however, these qualities are proper characteristics of the architect. Architecture is defined in the Encyclopaedia Britannica as "the art of building in such a way as to accord with principles determined, not merely by the ends the edifice is intended to serve, but by high considerations of beauty and harmony. . . . The end of architecture as an art is so to arrange the plan, masses and enrichments of a structure as to impart to it interest,

beauty, grandeur, unity, power. Architecture thus necessitates the possession by the builder of gifts of imagination as well as of technical skill.''

The elements of stability and strength are combined with ornamentation in all practical concepts and definitions of architecture. In the Standard Dictionary the definition of an architect is: ''One skilled in practical architecture; one whose profession it is to devise the plans and ornamentation of buildings or other structures and direct their construction.''

In the testimony of witnesses heard by the chancellor, the controversy of fact was not so much with regard to what the defendant did and contracted to do for his customers or patrons, but whether he represented himself to be, and to possess the qualifications of, an architect, in so doing. For the present we are concerned with whether in fact he performed the services of an architect and received compensation therefor; and of this we think there is no doubt.

The proof deals with the defendant's work on several dwellings constructed in and around Nashville. These buildings were extensive in size and number of rooms, and are of the type in which dwell the wealthy people of the community. Some of them are of imposing proportions. Defendant's contract with the owner included the furnishing of detailed plans and specifications for the construction. In some he associated himself with a firm of registered architects, but in others all the plans were furnished by his own office force which did not include a registered architect, and his contract with the owner included the responsibility of supervising the work of construction.

We quote the defendant's explanation of the develop-

ment of his business from the brief filed for him in this court: "Defendant for the past two or three years has been designing or drawing plans for residences. As heretofore stated, the defendant began designing buildings by reason of the fact that his clients solicited his opinion regarding the character and kind of houses that should be built in particular locations and caused him to collaborate with architects in order that the architects might have the benefit of his opinion. His ideas were sought chiefly on account of his suggestions as to arrangement, design, character, mass, form, color and line. The demand for the defendant's services in this respect increased to the point where it was necessary for him to offer his clients the services they were demanding, and in order for him to do so it was necessary to do the work himself. The defendant deliberated for some time before going into the designing of buildings and over a period of two years considered the matter before finally making his decision and deciding to design buildings himself for the reason that he found that by giving his honest opinion and criticising drawings executed by others he caused the draftsman or the originator of the plans to become very much offended and sometimes apparently the architect would become insulted at the comments of the defendant. Conditions finally reached the point where defendant was unable to work in conjunction with some of the architects."

The Code, section 7098, directs that "only properly qualified persons shall practice architecture" in this State; that any person practicing architecture "shall be required to submit evidence that he is qualified to practice and shall be registered as hereinafter provid-

ed;" that it "shall be unlawful for any person to practice . . . architecture" without registration, etc.

The practice of architecture necessarily includes the designing and drawing of plans for buildings, and, since the defendant admits that he draws and furnishes building plans, his business is in clear violation of the statute, unless saved by its exceptions.

Section 7099 of the Code provides:

"Nothing in this chapter shall be construed as requiring registering for the purpose of practicing architecture or engineering by a person unless the same involves the public safety or health, provided he does not use the appellation, 'architect' or 'engineer,' or an appellation which is a compounding, modifying, or qualifying by an adjective of the words 'architect' or 'engineer' or both, and which gives or is designed to give the impression that the person using same is an architect or engineer."

This section of the Code is clearly in the nature of an exception to the general provisions of the preceding section, and as such may not be liberally or freely construed. It provides that, if a person does not represent himself to be an architect, he may practice architecture without registration, "unless the same involves the public safety or health."

The application of this exception to the case before us depends upon the meaning of the words, "unless the same involves the public safety or health." If the practice of architecture as pursued by the defendant does involve the public safety or health, he is required to be registered, regardless of whether he refers to himself as an architect or by some other name or descriptive term.

We are of opinion that the business of drawing plans and specifications for dwelling houses is a busi-

ness which involves the public safety and health. It is on this hypothesis that architects may be required to demonstrate their ability by examination before they are permitted to offer their services to the public. In the construction of such buildings, it is contemplated that members of the public will enter and use them, as owner, guest, invitee, or licensee, for business purposes or those of pleasure, and for varying periods of time. The safety of all such persons may be involved in the sound and stable construction of the building. The proper ventilation and sanitation of buildings involves the health of all who use them as habitations. Therefore one who offers himself to the public to design, plan, and superintend the construction of buildings is engaged in a business which involves the public safety and health, notwithstanding his business is limited to the designing and construction of buildings intended to be used as private dwellings.

This phrase, "unless the same involves the public health or safety," appears again, in section 7110, subsection (6), of the Code, as a limitation to an exception in favor of "persons, mechanics, or builders," authorizing them to make plans and specifications for, and to supervise the construction of, buildings constructed by them or their employees, without the use by them of the appellation "architect" or "engineer."

The use of the limiting phrase in section 7110 implies that in the contemplation of the Legislature the construction of some buildings may not involve the public safety or health, while others may. It is clearly not every building which the Legislature intended to authorize unregistered persons to plan and construct. The wording of the exception indicates that it is to be applied

to particular instances wherein the construction of a building is proposed and undertaken by persons not engaged in the practice of architecture or engineering, and its application will depend upon whether the particular building is of such character and proportions as that its planning and construction involve the public health or safety. On the other hand, the phrase is used in section 7099 with reference to the practice of architecture, and the public there referred to contemplates and includes those members of the public who may consult and employ the practitioner. Regulation of a business or profession, as affecting or involving the public health and safety, is not inconsistent with legislative recognition and exception of specific instances in which the public interest is not apparent.

Applied to the business of the defendant, section 7099 permits him to exercise many functions ordinarily included in the work of an architect, if he does not use an appellation designed to give the impression that he is an architect. But he is clearly prohibited from holding himself out to the public as qualified to draw building plans or to undertake the responsibility of superintending the work of construction, which involve the safety of the structure and therefore the safety of the public. These things he may not do, by himself or by his agents who are not registered architects.

That these elements of design and construction superintendence are the primary objects of protection in the statute, is indicated by Code, section 7110, subsection (3), excluding the right of employees of a registered architect to undertake "responsible charge of design or supervision."

We hold therefore that the facts proven and admitted

sustain the ruling of the chancellor that the defendant has practiced architecture in violation of the statute; and, since his practice involves the public safety, it is not material whether or not the defendant represented himself to the public as an architect.

The constitutional question made by the appellant is stated in his answer to the original bill thus: "The attempted regulation of architects insofar as the planning, designing and building of private residences is concerned, does not bear such relation to the public health and safety as to render such regulations justifiable under the police power."

The test of this issue is stated in *Motlow* v. *State,* 125 Tenn., 547, 590, 145 S. W., 177, 188, L. R. A., 1918F, 177, quoted in *Campbell* v. *McIntyre,* 165 Tenn., 47, 52 S. W. (2d), 162: "In determining whether such act is reasonable the courts decide merely whether it has any real tendency to carry into effect the purposes designed— that is, the protection of the public safety, the public health, on [or] the public morals," etc.

We have hereinabove expressed our opinion that there is a reasonable relation between the practice of architecture, although limited to the construction of dwelling houses, and the public safety and health. We have no doubt that the exclusion of incompetent persons from that profession has a tendency to protect the public safety and health, and therefore must conclude that the regulatory statute was enacted for that purpose.

The power of the Legislature to regulate the practice of architecture, in the interest of the public safety was conceded by counsel and sustained by this court in *State Board of Examiners, etc.,* v. *Standard Engineering Company,* 157 Tenn., 157, 7 S. W. (2d), 47. In that case

the proceeding was merely to restrain the defendant from using the word "engineering" as descriptive of its plumbing business, without qualifying as a registered engineer, and no charge was made that the defendant was in fact practicing "engineering."

■■ The appellant contended before the chancellor, as he does here, that this proceeding may not be maintained, because at the time the bill was filed he was under indictment in a criminal court for the misdemeanor defined in the Code, section 7109. We think the pendency of a criminal prosecution is no bar to the present *action*. While proof of a violation of the statute is offered as a basis for the injunctive relief sought, no penalty is invoked and no punishment can be imposed herein. The judgment of the court can only act prospectively, and such is the only relief prayed. Delay or acquiescence on the part of the complainants is altogether immaterial, for there can be no prescriptive right, or right by estoppel, in an individual, to continue a practice made unlawful by a valid police statute.

In view of the nature of the defendant's legitimate business, as a decorator and designer, including no doubt some of the functions of an architect, not involving the public health or safety, as authorized by Code, section 7099, we think the injunctive relief awarded complainants should be definite and specific. The decree to be entered here will affirm the decree of the chancellor that the defendant, at the date the bill was filed, was practicing architecture in violation of law, and will enjoin him (1) from representing himself in the conduct of his business as qualified to design, draw, or furnish plans and specifications for the construction of buildings, or to

supervise their construction; and (2) from entering into contracts to provide, or providing, such plans and specifications.

The defendant will pay the costs.