## Commonwealth v. Coryell

*E. LeRoy Keen*, assistant district attorney, and *Karl E. Richards*, district attorney, for Commonwealth.
*Samuel Handler*, for defendant.

WICKERSHAM, J., July 13, 1936.—The indictment. returned by the grand jury charges that defendant did "unlawfully . . . engage in the practice of architecture in the State of Pennsylvania, County of Dauphin, by then and there preparing plans for buildings and superintending their construction, some of said plans being issued without title and some of said plans carrying the title of designer"; also that he "did unlawfully, wilfully, knowingly and maliciously hold himself forth as an architect. . . . ."

The case was tried by the court without a jury and testimony was taken stenographically, after which we

ordered the case on the argument list that it might be heard by the court en banc.

It appears from the testimony that defendant, Coryell, is not an architect; that on two occasions he filed with the building inspector plans for alterations to certain houses in the City of Harrisburg; that one of these plans was signed "Plans by Harry D. Coryell, Harrisburg, Pa.," and that he signed the other plans "Harry D. Coryell, designer". In at least one of the cases, and we think, in both, he did not solicit the business of preparing plans for these alterations. The plans were prepared by him, and he also superintended the repairs made to the buildings of the two persons who employed him.

Defendant is a graduate of the Harrisburg Technical High School, after which he was an office boy in the office of Mr. Lappley, an architect; while he was an office boy he eventually was designing and drafting, in which position Mr. Lappley occasionally employs him at the present time. He has never signed his name as architect; he has never held himself out to be an architect; he does not have an office as an architect; there is no sign on his home designating him as an architect; he does all his work in his own home. He tried to explain his position to anyone who called on him to do work for them that he was not an architect, and that he could not take their job if that was what they were calling for. He has never used any advertising at all; he never told persons that he was an architect; his letterheads contain only his name, followed by "Harrisburg, Pa." It appears, however, that in one of the plans defendant drew, after signing the same, he failed to give his true appellation as contractor or builder or carpenter, or designer, after his signature.

The difference between a designer and an architect, as explained by defendant, is:

"The designer is a person that lays out the plan of a building interior and exterior, that is about all. An architect is a man that does that—that figures out the construction, promotes the building and oversees its erection.

It is entirely different, because designing is one small phase of architecture; architecture is, as I understand it, as explained to me, divided into two parts, design and construction; the construction I take no part in at all."

There was also evidence that he was a person of good reputation for truth and veracity.

Under this statement of the evidence the Commonwealth contends that defendant should be declared to be guilty of a violation of the Act of July 12, 1919, P. L. 933, regulating the practice of architecture by prohibiting persons from using the words "registered architect" or words, letters or figures implying that he is such, unless he has complied with the provisions of the act of assembly or is the holder of a certificate of qualification to practice architecture. Section 13 of the act allows persons other than architects to design buildings and supervise their construction so long as they do not use the title of "architect": Simons, Brittain & English, Inc., v. Armstrong et al., 86 Pa. Superior Ct. 98. We quote from the opinion of Judge Trexler, p. 102:

"It is significant, that section 13 above quoted, allows persons other than architects to design buildings and supervise their construction as long as they do not use the title of architect. If I wish to build a house I can buy a book of plans in a stationery store, or I can ask a cobbler to prepare plans and I see no reason why a corporation authorized to erect buildings may not furnish me with the requisite drawings, but all such persons must appear in their true light and dare not assume the title of architect."

Said Act of 1919 was amended by the Act of April 24, 1933, P. L. 64, in which section 13 was amended by striking out the words "or et cetera" and substituting therefor the words "or builder or carpenter", so that, while the case of Simons, Brittain & English, Inc., v. Armstrong et al., supra, was decided before the Act of 1933 was passed, we think it is applicable and controls the instant case.

Had the legislature, by making the changes, intended to limit the designing and supervising of building construction to the specifically designated classes of persons named in the amendment, its purpose could have been clearly and simply stated by providing that "except for registered architects, none other than engineers, contractors, builders, and carpenters" should have the right to design buildings and supervise their construction. Instead, however, the legislature saw fit to say that the act shall not be construed to prevent "persons other than architects" from designing buildings and supervising their construction.

We think the words "as engineer or contractor or builder or carpenter" were obviously intended as words of illustration and not as words of limitation. This is clearly borne out by considering the phrase in question in the light of the definition of the word "as". The word "as" is defined in Webster's New International Dictionary (2d ed.) as follows: ". . . like; similar to; in the same manner with or in which". This is obviously the ordinary import of the word in a bill of lading restricting the carrier's liability "except as forwarder". The carrier's liability was to be "similar to that of forwarders" or "of the same kind". They were liable in the same manner, or in the manner in which forwarders are liable. See also 1 Words & Phrases (3d Series), 1307; Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693.

It therefore follows that not only engineers, contractors, builders, and carpenters, but all persons engaged in similar work, no matter how designated, so long as the title of "architect" is not used, were intended to be excepted.

We think this act must be given a reasonable construction: Dawson v. Shaw, 28 Pa. Superior Ct. 563. There it was held:

"Penal statutes are to be reasonably construed. Where such an act contains such an ambiguity as to leave a reasonable doubt as to its meaning, it is the duty of the court

not to inflict the penalty; and a proviso in a penal statute which is favorable to the defendant, is to be liberally interpreted in his favor."

It must not be overlooked, however, that section 13 of the Act of 1919, as amended by the Act of April 24, 1933, P. L. 64, 66, provides:

"This act shall not be construed to prevent persons other than architects from filing applications for building permits or obtaining such permits; nor shall it be construed to prevent such persons from designing buildings and supervising their construction, provided their drawings are signed by the authors with their true appellation as engineer or contractor or builder or carpenter, but without the use in any form of the title of architect."

Now it appears that in one of the plans and designs prepared by defendant he only signed his name and date but did not attach thereto his true appellation as engineer or contractor or builder or carpenter or designer. We think insofar as he neglected to so designate his true appellation he violated the act and must be therefore convicted.

We have examined the case of State Board of Examiners for Architects and Engineers v. Rodgers, 167 Tenn. 374, 69 S. W. (2d) 1093, which holds:

"Defendant who entered into contracts with owners for furnishing plans and specifications for construction of dwellings and for supervising construction work, *held* engaged in performing services of 'architect'. . . .

"Statute providing that, if person does not represent himself to be architect, he may practice architecture without registration unless this involves public safety or health, being in nature of exception to general provisions of preceding section requiring persons practicing architecture to register, may not be liberally construed. . . .

"One offering himself to public to design, plan, and superintend construction of private dwellings is engaged in business involving 'public safety and health,' and is required to be registered as 'architect'."

This was a proceeding in equity to restrain defendant from acting as an architect without being licensed so to do, which was held to involve public safety and health, and it appears to be upon this ground that the injunction was granted. Defendant's legitimate business was decorator and designer, including, as the Supreme Court of Tennessee held, "no doubt some of the functions of an architect, not involving the public health or safety . . . we think the injunctive relief awarded complainants should be definite and specific. The decree to be entered here will affirm the decree of the chancellor that the defendant, at the date the bill was filed, was practicing architecture in violation of law". He was therefore enjoined. While this is an authority of great weight, we are of opinion that under the facts as stated by the Supreme Court of Tennessee it does not apply to or have controlling influence in the case at bar.

We think the question is, rather, did Coryell hold himself out to be an architect, and did he sign one of his plans and designs with his own signature without specifying whether he was one of the persons mentioned in section 13 of the act we have under consideration. We are of opinion, therefore, that, as he did not comply with the particular sentence in section 13 of the act, he must be held to have violated the act, and therefore we find him guilty.

And now, July 13, 1936, it is ordered, adjudged, and decreed that defendant is guilty of the misdemeanor for which he stands indicted, and a verdict of guilty is hereby entered, and the district attorney is directed to call him for sentence; the costs to be paid by defendant.