411 P.2d 822

.Joseph J. JACKLING and Inez E. Jackling, husband and wife, Appellants,

v.

Arthur Jack SNYDER, Appellee.

No. 1 CA–CIV 163.

Court of Appeals of Arizona.

March 11, 1966.

Rehearing Denied April 8, 1966.

Review Denied April 26, 1966.

64

Riddel & Riddel and Robert R. Weaver, by Harold Riddel, Phoenix, for appellants.

Cox & Hedberg, by James C. Cox, Jr., Phoenix, for appellee.

CAMERON, Judge.

This is an appeal from an order denying a motion for new trial after a jury verdict and judgment in favor of the plaintiff, Snyder, against the defendants, Joseph J. and Inez E. Jackling, in the amount of $2,512.50.

We are called upon to determine whether a person who holds himself out as a "golf course architect" is an "architect" within the meaning of the Arizona Revised Statutes and therefore required to be licensed by the State of Arizona to perform such services. We are also asked to determine whether a written contract for planning and supervising the construction of a golf course which provided for payments of percentage amounts during construction of the golf course is divisible, thereby allowing the plaintiff to maintain an action for its breach even though the total contract may not have been completed on his part.

The facts as are necessary for a determination of this matter on appeal are as follows: Defendants, Jacklings, owned approximately 40 acres of land near Sedona, Arizona, and desired to construct a nine-hole, "par three" golf course in connection with the development of the property. Joseph J. Jackling contacted the plaintiff, Arthur Jack Snyder, to prepare plans and specifications to consist of a preliminary plan showing the location of the golf course on the tract of the land including tees, fairways, detailed plans and specifications of the greens and irrigation system. Snyder was also to assist in the staking of the locations and to check the progress of construction to insure the correct interpretation and development of the plans by the grading and irrigation contractors.

Snyder's business card at the time he entered into the agreement with Jackling, stated he was a "Landscape Architect and Golf Course Architect". His business cards at a later date stated, "Golf Course Architect and Turf Grass Consultant". It is the testimony of Mr. Jackling that at the time he entered into the contract with Snyder, he believed Snyder to be a registered architect licensed by the State of Arizona. The testimony of Mr. Snyder indicates that at the time he moved to Arizona, he called the Arizona Board of Technical Registration to determine if he would need to be licensed as a golf course architect. His testimony was to the effect that he was informed that no license or registration for golf course architects or landscape architects was required. Mr. Snyder holds a Bachelor of Science degree from Pennsylvania State University, and has been in the business of designing and supervising the construction of golf courses for many years. Testimony indicates that he has designed and supervised the construction of other golf courses in Arizona and New Mexico. It is undisputed that Snyder is not registered as an architect or in any other capacity with the Arizona State Board of Technical Registration.

The contract between Jackling and Snyder provided that Snyder was to receive

the gross sum of $3,750.00 payable as follows:

(1). 50% upon completion and acceptance by Jackling of the plans and specifications.

(2). 25% at completion of the rough grading.

(3). 25% at completion of the seeding operation.

The testimony is ample to support a finding that at' the time Snyder discontinued his work, that the rough grading portion of the golf course had been completed and that Snyder had received the amount of $300.00 on the contract.

 We will first discuss whether the plaintiff, Snyder, is an architect within the meaning of the Arizona Revised Statutes. It is the contention of Jackling that pursuant to Northen v. Elledge, 72 Ariz. 166, 232 P.2d 111 (1951), if Snyder is required to be a licensed architect and does not have a license, then he would be precluded from successfully bringing suit upon his contract of employment. It is the contention of Jackling that the work Snyder performed brings him within the provisions of the Arizona Revised Statutes. Jackling further contends that even if Snyder is not within the exact provisions of the statute, that by holding himself out as an "architect" he places himself under the statute. We do not agree with Jackling's position that Snyder is an architect within the meaning of the Arizona Revised Statutes which read in part as follows:

"1. 'Architect' means a person who, by reason of his knowledge of the mathematical and physical sciences, and the principles of architecture and architectural engineering, acquired by professional education, practical experience, or both, is qualified to engage in the practice of architecture as attested by his registration as an architect.

"2. 'Architectural practice' means any service or creative work requiring architectural education, training and experience, and the application of the

mathematical and physical sciences and the principles of architecture and architectural engineering to such professional services or creative work as consultation, evaluation, planning, design and supervision of construction for the purpose of assuring compliance with specifications and design, in connection with any building, or site development. A person shall be deemed to practice or offer to practice architecture who in any manner represents himself to be an architect, or holds himself out as able to perform any architectural service or other services recognized by educational authorities as architecture." 32–101, subsecs. 1, 2 A.R.S.

Architecture,

"is defined in the Encyclopedia Britannica as 'the art of building in such a way as to accord with principles determined, not merely by the ends the edifice is intended to serve, but by high considerations of beauty and harmony. * * * The end of architecture as an art is so to arrange the plan, masses and enrichments of a structure as to impart to it interest, beauty, grandeur, unity, power. Architecture thus necessitates the possession by the builder of gifts of imagination as well as of technical skill.'

"The elements of stability and strength are combined with ornamentation in all practical concepts and definitions of architecture. In the Standard Dictionary the definition of an architect is: 'One skilled in practical architecture; one whose profession it is to devise the plans and ornamentation of buildings or other structures and direct their construction.'" State Board of Examiners, etc. v. Rodgers, 167 Tenn. 374, 69 S.W.2d 1093 at 1094 (1934).

We do not believe that the definition given in the Arizona Revised Statutes concerning "site development" is broad enough to cover the occupation of the plaintiff Snyder. In order for the plaintiff Snyder to

be controlled by the statute (32–101 A.R.S.), and to be subject to its requirements and possible penalties for failure to register with the Arizona State Board of Technical Registration, the act must clearly include the plaintiff in his line of endeavor, that of developing golf courses. It is the contention of Jackling that an architect would or could normally design and supervise the construction of a golf course. However, we feel that the proper criteria for determining whether the plaintiff Snyder must have a license as an architect to design and supervise the construction of golf courses is not whether some or all of his services might lawfully be performed by a licensed architect, but whether such functions are necessarily embraced within the scope of the statute. We feel and therefore hold that the term "site development" as used in Section 32–101, subsec. 2 A.R.S., is limited to work which is a necessary part of the preparation of a site on which a building or other structure is to be or is placed. We do not believe that the statute is broad enough to include golf course architects.

■ Jackling next contends that Snyder, by using the term "architect" on his business card, and holding himself out as a "golf course architect", implied that he was a registered architect as provided by 32–101, subsec. 2 A.R.S. Our Supreme Court has discussed the Arizona statute concerning architects and engineers in the three companion cases of State v. Beadle, 84 Ariz. 217, 326 P.2d 344 (1958), State Board of Technical Registration v. McDaniel, 84 Ariz. 223, 326 P.2d 348 (1958), and State Board of Technical Registration v. Bauer, 84 Ariz. 237, 326 P.2d 358 (1958). These cases are concerned primarily with the criminal aspects, Chapter 1, Title 32, as well as the power of the State Board of Technical Registration to prohibit and license architects as provided by statute. We do not believe these cases apply to the case at bar. Plaintiff did not hold himself out as a "building architect" or as an "architect" licensed by the State of Arizona. He held himself out as "golf course architect", and

we do not believe that the evidence below is sufficient to show that this term is misleading or implies that he is or was a registered "architect" licensed by the State Board of Technical Registration. While it may be better practice to use a term other than the word "architect", we do not believe that the phrase "golf course architect" in itself, under the facts in the instant case, created an implication that he was a registered "architect" as provided by the laws of the State of Arizona. In this regard, it is interesting to note that the testimony of Mr. Walter J. Edelblut, Jr., indicated that while some persons advertising as "landscape architects" are licensed by the State Board of Technical Registration, most of them are not.

■ It is appellant's next position that the contract between Jackling and Snyder was indivisible, and that before Snyder could recover he must show a complete performance of the contract. The evidence is sufficient from which the jury could find that the work was not completed by Mr. Snyder because of Jackling's breach of the contract. For this reason the work terminated. Restatement of Contracts, Volume 1, page 391–392, reads as follows:

"269. Conditions Where Performances Are Not Due Simultaneously. Where by the terms of promises for an agreed exchange a stated material performance by one party is due at an earlier time than a stated performance by the other party, the duty to render the latter performance is constructively conditional on the earlier performance being rendered, except as stated in § 268(2). * * *"

"ILLUSTRATIONS:

"1. A promises B to work for him during the month of July. In consideration of A's promise B promises A to pay him $200 on July 15th. A's work for the fortnight preceding July 15th is a condition which must be performed before B need make the promised payment. Payment by B is a condition, which must be performed before A

need continue to work during the latter half of the month."

We believe that since Snyder performed his portion of the contract up to the rough grading portion at the time the contract was broken or terminated by Jackling, the testimony is ample from which the jury might find that the plaintiff Snyder was entitled to be remunerated on the basis of 75% of the agreed contract less offsets and credits to Jackling. Woodward v. White, La. App., 125 So.2d 509 (1961).

The judgment is affirmed.

STEVENS, C. J., and DONOFRIO, J., concurring.