417 P.2d 928

Allen E. SIEGAL, aka A. E. Siegal, Beatrice Siegal, his wife, and Marc A. Siegal, Appellants,

v.

Ralph HAVER and Jimmy R. Nunn, Co-Partners, dba Ralph Haver & Associates, Appellees.

1 CA–CIV 272.

Court of Appeals of Arizona.

Sept. 7, 1966.

Rehearing Denied Oct. 11, 1966.

Tognoni & Pugh, Phoenix, by William K. Strong, for appellants.

Elsing & Crable, Phoenix, by F. R. Crable, for appellees.

CAMERON, Judge.

This is a suit by the plaintiff below, an architectural partnership, to recover fees and expenses earned by reason of a contract for architectural services between the plaintiff and the defendants. The matter was tried before the court without a jury, and from a judgment in favor of the plaintiff in the amount of $31,000.00, the defendants appeal.

We are called upon to interpret the contract and the addendum thereto, and to determine whether or not the facts support a judgment against defendants Allen E. Siegal and his wife Beatrice, and Marc A. Siegal, son of the defendant Allen E. Siegal.

From the facts material to this matter, it appears that in 1958, the parties entered into negotiations for architectural services concerning the construction of a four million dollar hotel complex to be located on the property leased by defendant in Phoenix.

On 18 February, 1959, plaintiff, the first party, and defendant, Allen E. Siegal, the second party, entered into a written contract, which provided as follows:

"First Party agrees to furnish complete architectural services including design and structural engineering for the construction of building and or buildings to include a 200 room hotel, coffee shop, cocktail lounge bar, dining room and dining area. Second Party will supply the services of a mechanical engineer, electrical engineer and sanitary engineer.

"First Party to receive for his services two and one half (2½) percent of the cost of construction. * * * The fee of First Party shall be paid in the following manner:

"First Party acknowledges receipt of $4,000.00; $10,000.00 additional to be paid to First Party when plans and specifications are approved by Building Department of the City of Phoenix.

"In the event plans are approved by the City of Phoenix as heretofore stated, but construction is not commenced by January 2, 1960, a final and complete payment of $16,000.00, to the First Party shall be made by Second Party. However, if plans and specifications are used at any subsequent time, payments made to such date shall be applied and this contract reinstated.

"First Party shall immediately commence to draw a sketch of proposed building and have same completed by Wednesday, February 25, 1959 for approval of Second Party. Upon approval of sketch by Second Party, First Party agrees to complete plans and specifications within 60 days of such approval."

The contract was signed, "Allen E. Siegal, By Marc Siegal", and "Ralph Haver" for "Ralph Haver and Associates".

This writing was amended by an addendum dated 28 March, 1959, which provided as follows:

"First Party agrees to furnish complete electrical, heating and air-conditioning, sanitary and mechanical engineering. In consideration of such additional services, fees of First Party are hereby amended as stated below:

"First Party to receive for his services three and one half (3½) percent of the cost of construction.

"First Party to receive $15,000.00 additional in lieu of $10,000.00 indicated on original contract when plans and specifications are approved by the Building Department of the City of Phoenix."

The addendum was signed by Allen E. Siegal and Ralph Haver.

Plaintiff claims that, pursuant to the agreement, he obtained the services of Foltz & Associates, structural engineers, and Lowry & Sorenson, mechanical engineers to assist with the project. The former, as consultants, submitted structural drawings and specifications to plaintiff. In the same capacity, Lowry & Sorenson designed and submitted drawings for the hotel heating, plumbing and cooling, and electrical system. Plaintiff alleges he owes approximately $16,000.00 to these firms.

The testimony of the plaintiff also indicates that the preliminary sketches were complete by 25 February, 1959, as set forth in the contract. Plaintiff also testified that he notified the Siegals that he would need additional plumbing, kitchen and other specifications if plans were to be completed by the target date. Testimony is sufficient from which the court could well find that the Siegals never submitted such further specifications and that they did not authorize the plaintiff to submit plans to the Phoenix Building Department for their approval, though, as plaintiff testified, he was ready and willing to do so.

After several letters to the Siegals requesting information with no response, the plaintiff submitted a bill on 8 January, 1960, 3 February, 1960, and a letter 14 March, 1960, in which he stated:

"Besides our own office expenses, I have paid to date for consulting engineers $8,-

878.12, for mechanical engineering, and $4,703.00 for structural engineering. Adding other expenses to these fees, indicates that we will have our bare costs out of this project when we receive payment."

This letter was followed by letters of 22 March and 13 April of 1960, when finally on 19 April, 1960, Marc Siegal replied to Mr. Haver that his father was out-of-town and would not be back until next week, and that as soon as he returned "we will get in touch with you and straighten out things." In the meantime, the Siegals' interest in the property by way of the lease, was terminated for failure to pay rent due for March and April of 1960.

No findings of fact or conclusions of law having been requested by the parties, none were given. We must therefore affirm, if possible, on any theory within the issues and supported by the evidence. Moeur v. City of Tempe, 3 Ariz.App. 196, 412 P.2d 878 (1966).

## VALIDITY OF JUDGMENT AGAINST CO-DEFENDANTS MARC & BEATRICE SIEGAL

Beatrice, Allen's wife, was joined as a party defendant although there was no allegation that the contract was entered into for the benefit of the community. It is admitted that Beatrice Siegal was married to Allen Siegal at all times mentioned herein. Beatrice Siegal, along with Marc Siegal the son, chose to defend in aggregate with the husband and father, Allen E. Siegal. The answer denies that the contract was entered into by the defendant, Beatrice Siegal:

"It is, of course, well settled that a debt incurred by a married man during coverture is presumed to be a community obligation and that the burden is on the one attempting to overcome the presumption to prove his contention." Donato v. Fishburn, 90 Ariz. 210, 213, 367 P.2d 245, 246 (1961).

Although raised in the complaint, the testimony is insufficient to overcome the presumption that the defendant, Allen Siegal, was acting for and on behalf of the marital community at the time the contract was entered into.

Defendants also claim that Marc Siegal was not a party to the contract, but merely the employee of the father Allen E. Siegal. Although the issue was raised in the answer, it was not seriously urged at the trial. The testimony of Marc Siegal was such that the trial court could find that Marc Siegal was a principal rather than a mere employee of his father.

## PERFORMANCE BY THE PLAINTIFF

The contract and addendum both provided that the payments were to be made when the plans and specifications were "approved by the Building Department of the City of Phoenix". The plans were not so approved, and it is the contention of defendants that plaintiff may not recover as this was a condition precedent to payment. Our Supreme Court has stated:

One waives the performance of a condition and cannot rely on it to prevent recovery where its non-performance is caused or consented to by him. Tyson v. Tyson, 61 Ariz. 329, 149 P.2d 674 (1944).

Although the facts indicate that the plans and specifications were not complete within the 60 day period specified, there is ample evidence for the trial court to find that plaintiff's failure to so complete was due to defendants' refusal to supply them with needed information concerning the additional specifications.

Defendants further contend that the contract required plaintiff to present the plans to the Building Department. A reading of the contract indicates only that the plaintiff shall be paid "when the plans are approved", but is silent as to which party is to submit them. Plaintiff was willing to do this, however, and plaintiff's letter of 13 July, 1959, stated:

" * * * At this time we can put the plans in the City Building Department

for a permit, but I shall wait until I hear from you before I make application for permit. The cost of the permit will be approximately $1,000.00."

The defendants having by their actions prevented plaintiff from fully performing this portion of the contract cannot now successfully defend upon plaintiff's failure to do so.

## THE MEASURE OF DAMAGES

Reading the contract and the addendum together, we find that the plaintiff is entitled to recover two different amounts from the defendants.

First, as to the amount of $15,000.00 set forth in the contract as $10,000.00 but changed to $15,000.00 in the addendum. This amount was to become due and payable when the plans and specifications were approved by the Building Department of the City of Phoenix.

The testimony and the letters in evidence indicate that the plans were ready to submit to the Building Department for approval and needed only defendants' permission to do so. We hold that plaintiff has performed this portion of the contract and is entitled to the full amount of $15,000.00.

The additional amount of $16,000.00 is a different matter. The contract stated:

"In the event plans are approved by the City of Phoenix heretofore stated, but construction not commenced by January 2, 1960, a final and complete payment of $16,000.00 to the First Party shall be made by the Second Party. However, if plans and specifications are used at any subsequent time, payments made to such date shall be applied and this contract reinstated."

It is apparent that the parties contemplated approval by the City Building Department and a complete set of plans. The plans were sufficiently complete to submit to the City Building Department for approval, but were not completed due to the actions of the defendants. While defendants, having prevented plaintiff from completing the plans, cannot successfully defend based on plaintiff's non-performance, plaintiff is not entitled to take advantage of this situation to obtain more than he would have received had he completed the contract:

"If the defendant's prevention has saved some expenditure on plaintiff's part the amount of that saving must be deducted from the full contract price." 3 Corbin on Contracts, page 953.

The clear meaning of the agreement indicates that defendants contracted for "complete" plans and specifications for which plaintiff was to receive a flat fee if construction plans were abandoned. What percentage of completion was attained by the plaintiff is a matter for the trial court to determine and the plaintiff should then be allowed the amount the percentage of completion bears to the amount of $16,000.00. As was stated:

"Under another provision of such agreement it is provided that from time to time during the progress of the architect's work, payments should be made in such amounts that the architect shall have received 75% of the total compensation at the completion of the general working drawings and specifications. What the court below did was to compute the total compensation payable had the contract been fully performed. He then deducted from that amount 25%, since after abandonment of * * * the contract by the defendants, the supervisory work provided for in the contract would not have to be performed by the architect. A further deduction of one-eighth of the total compensation was made to compensate for the fact that further modification of the plans and specifications would not have to be made. Defendants assert that the record is devoid of evidence to support this last computation. It is true that no direct evidence was given with respect to such percentage deduction. However,

in view of the plaintiff's uncontradicted testimony with respect to the value of the services rendered, the appellants are in no position to complain about that specific deduction." Parrish v. Tahtaras, 7 Utah 2d 87, 318 P.2d 642, 645, 646 (1951).

And:

"We believe that since Snyder performed his portion of the contract up to the rough grading portion at the time the contract was broken or terminated by Jackling, the testimony is ample from which the jury might find that the plaintiff Snyder was entitled to be remunerated on the basis of 75% of the agreed contract less offsets and credits to Jackling. Woodward v. White, La.App., 125 So.2d 509 (1961)." Jackling v. Snyder, 3 Ariz.App. 63, 411 P.2d 822, 826 (1966).

The judgment as to the three defendants is affirmed as to the amount of $15,000.00 in the contract, and remanded for a further determination as to what portion of the $16,000.00 was earned by the plaintiff.

STEVENS, C. J., and DONOFRIO, J., concur.