433 P.2d 1006

W. T. KEPLINGER and Rita G. Keplinger, his wife, Appellants,

v.

Margaret BOYETT, Appellee.

No. 1 CA–CIV 487.

Court of Appeals of Arizona.

Nov. 29, 1967.

Renz L. Jennings and Hess Seaman, Phoenix, for appellants.

Robert D. Greene, Phoenix, for appellee.

KRUCKER, Judge.

Mrs. Boyett, plaintiff below, instituted suit against Mr. and Mrs. Keplinger, husband and wife, defendants below, to recover the sum due on a promissory note executed by the husband alone. From a judgment in favor of Mrs. Boyett in the amount of the note together with interest thereon, against them jointly and severally, the Keplingers have appealed.

Appellee's counsel, in his answering brief, has urged this court to dismiss the appeal on the grounds of the inadequacy of appellants' opening brief. Although it is difficult to ascertain the legal issues sought to be presented to this court, we are loath to invoke such a harsh remedy and thereby deprive the appellants of a consideration on the merits. It would appear that appellants' attack on the judgment is:

"Under the facts of the case the debt at most is a separate debt of the appellant W. T. Keplinger who signed the note either as the agent of J. W. Barker, or as a pure accommodation to J. W. Barker."

We shall therefore confine our consideration to whether the trial court erred in finding that the debt, evidenced by the note, was a community obligation, such finding being implicit in the judgment.[1]

Appellants, in support of their position, state the controlling principle of law to be that an accommodation note signed by the husband is the separate debt of the husband. This statement does not go far enough. Community property is protected from the liability of the husband as a sure-

ty or guarantor when the note is not for the benefit of the community estate. Payne v. Williams, 47 Ariz. 396, 56 P.2d 186 (1936); Perkins v. First National Bank of Holbrook, 47 Ariz. 376, 56 P.2d 639 (1936).

The evidence is in conflict as to the circumstances surrounding the execution of the subject note. However, if there is any reasonable evidence to support the trial court's finding that this was a community obligation, we will sustain the judgment. Donato v. Fishburn, 90 Ariz. 210, 213, 367 P.2d 245 (1961). The record discloses the following evidence which supports the trial court's determination. A promissory note, payable to Mrs. Boyett, for $7500 bore the signature of Mr. Keplinger as maker. Mr. Keplinger admitted signing the note. Also in evidence was a check in the amount of $7500 payable to Mrs. Boyett which she endorsed as follows:

> "Margaret K. Boyett
> Pay to order of
> W. T. Keplinger"

The face of the note itself did not disclose that Mr. Keplinger was signing the note as an agent for someone else. Mrs. Boyett testified as follows concerning the transaction:

"A. Mr. John Barker, who was in California, called me and asked me if I would let Mr. Keplinger have $7,500 to pay a chattel mortgage on the apartments which I was told he owned. I talked to Mr. Keplinger on the phone, and he told me that that was what he needed the money for; that Mr. Barker had offered to help him get this from the Gibraltar Loan Company, but Mr. Barker was detained in California for several days, and he asked me if I could let Mr. Keplinger have this money until he got back and could arrange to take this up with the Gibraltar Loan Company. So I talked to Mr. Keplinger on the

---

[1]. From the following statement in their brief, the appellants misconceive this to be an express finding:

"The judgment appealed from not only expressly held that the debt was a community debt. * * *"

phone, and he told me, also, that that was why he wanted this money. So I decided to let him have it. And I went to the Southwest Loan Company where I had this money, and got the check, brought it home. And Mr. Keplinger came by my apartment

\* \* \* \* \* \*

Q. Would you relate the conversation between yourself and Mr. Keplinger the afternoon that he came to your apartment?

A. I asked him again—well, I didn't ask him, he volunteered the information that he needed this money to pay the chattel mortgage, and he needed it that very day. So as a favor to Mr. Barker and Mr. Keplinger I let him have the money.

Q. Did he in any way intimate or inform you that he claimed to be acting as an agent for anyone else?

A. He did not.

Q. When you presented the note to him for him to sign, did he in any way refuse to sign it or intimate that it should be signed differently than the way it did actually become signed?

A. He did not."

As to the endorsement of the check, Mrs. Boyett testified:

"Q. \* \* \* How did you endorse that?

A. The check being made out to me, I endorsed it as it was made out, Margaret G. Boyett, pay to the order of W. T. Keplinger.

Q. Did Mr. Keplinger ask you to endorse it any other way?

A. No, he did not.

\* \* \* \* \* \*

Q. Then, to the best of your knowledge, information and belief, this money was paid over to W. T. Keplinger?

A. Right.

Q. Going back to the original conversation with Mr. Keplinger, did he at that time inform you or intimate that he owned or had an interest in a certain apartment building known as the Savoy Apartments?

A. He did.

Q. Did he represent that he personally had it?

A. I can't remember that he represented that. He did tell me that he—as I remember—he and his wife owned the Savoy Apartments."

Mr. William Kardel, whose signature appeared on the note as a witness corroborated this evidence by his testimony.

In evidence we also find certain interrogatories propounded to Mr. Keplinger and his answers thereto. One is as follows:

"Q. On or about June 15, 1964, [the date of the note] or previous to that time was there a Chattel Mortgage on the furniture located at the Savoy Apartments? If the answer is yes, state the following information:

a. the name of the holder of the Chattel Mortgage, its face amount, its terms, whether it is still in existence, and if it is no longer in existence, the date it was paid off.

A. At one time there was a chattel mortgage on the furniture, but it had been paid off before the refinancing loan was obtained from Gibraltar Savings and Loan. Subsequently a chattel mortgage to Public Finance Corporation. The refinancing of Savoy Apartment Loan was made as of March 13. The owners were notified of completion of escrow and terms of payment by letter of April 7th, 1964. A modification of the terms was made and signed June 10th, 1964. The owners were notified by papers and letters June 16th or 17th, 1964. Prior to the refinancing of the property there had been a chattel mort-

gage on the furniture and carpeting to Metropolitan Life in the amount of $6,635, but included in the original $80,000 first mortgage and satisfied at the time of the refinancing. A 36-month chattel mortgage was obtained from Public Finance Corporation, a refinancing of a previous loan, using the furnishings of the Savoy Apartments as security to the amount of $2,988.-00 dated June 12, 1964. The owners were advised of the completion of the transaction about June 16. The loan is still in effect."

The foregoing answer of Mr. Keplinger lends credence to Mrs. Boyett's testimony to the effect that the loan she made was to pay off a chattel mortgage.

We are of the opinion that the foregoing supports the trial court's finding that Mr. Keplinger did not execute the note as an accommodation maker and that the debt was a community obligation. Mr. Keplinger could contract community debts, A.R.S. § 25–216, subsec. B; City of Phoenix v. State of Arizona, 60 Ariz. 369, 137 P.2d 783, 146 A.L.R. 1255 (1943). When acting as manager of the community in furtherance of community affairs, obligations incurred thereby are those of the community. The fact that a wife did not sign a note or acquiesce in the incurring of such obligations does not avoid community liability. Ellsworth v. Ellsworth, 5 Ariz.App. 89, 423 P.2d 364 (1967). The debt incurred by Mr. Keplinger was presumed to be a community obligation and the burden of overcoming such presumption was Mrs. Keplinger's. Siegal v. Haver, 4 Ariz.App. 119, 417 P.2d 928 (1966); Osborne v. Massachusetts Bonding and Insurance Co., 229 F.Supp. 674 (D.C.Ariz.1964). This she failed to do.

However, notwithstanding this was a community debt, the separate property of the wife is not liable for a community debt, Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304 (1947); Fox v. Weissbach, 76 Ariz. 91, 259 P.2d 258 (1953). Therefore a personal judgment against her was improper as the most Mrs. Boyett was entitled to as against Mrs. Keplinger was a judgment establishing the community character of the debt. Ruth v. Rhodes, supra.

One additional question is raised— the propriety of the trial court's refusal to permit Mr. Keplinger to file an amended answer alleging fraud. The motion was not made until after the case was tried and argued to the court and judgment rendered in favor of the plaintiff against Mr. Keplinger. On the state of the record, we cannot say that the trial court abused its discretionary power to receive amended pleadings. Contractor & Mining Service & Supply, Inc. v. H & M Tractor & Bearing Corp., 4 Ariz.App. 29, 417 P.2d 542 (1966).

Finding no error in the record except as to the separate judgment against Mrs. Keplinger, the judgment is modified to read:

"That plaintiff have judgment against the defendant W. T. Keplinger and the community composed of W. T. Keplinger and Rita G. Keplinger, husband and wife, in the sum of Seven-thousand-five-hundred and no/hundreds dollars ($7500)"

and as to all other matters therein contained, it is affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.