497 P.2d 83

**The HOFMANN COMPANY, an Arizona corporation, Appellant,**

v.

**Herbert MEISNER and Jean Meisner, husband and wife, Appellees.**

**I CA–CIV 1679.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 16, 1972.

Wolfe & Harris, P. A., by Irwin Harris, Phoenix, for appellant.

Berry & Herrick, by Richard S. Berry, Tempe, for appellees.

JACOBSON, Judge.

This appeal revolves around the question of the liability, both personal and community, arising from the execution of a purported personal guarantee.

In August, 1968, defendant Herbert Meisner, president of Wood Surgeons, Inc., a cabinet manufacturer, applied for credit from plaintiff, the Hofmann Company (Hofmann), a wholesale supplier of building materials. Defendant Meisner filled out a form supplied by Hofmann which was entitled "Application for Credit." The top portion of the application consisted of credit information and the bottom portion contained a paragraph which was a guarantee to pay all sums loaned to the corporate debtor, Wood Surgeons. Herbert Meisner signed without designating the capacity in which he signed. Thereafter, plaintiff extended credit to Wood Surgeons for goods and supplies purchased by the corporation.

Upon failure of the corporation to pay the amount owed, plaintiff filed a complaint against Wood Surgeons, Meisner Enterprises[1] and Herbert Meisner and his wife, Jean, alleging that the sum of $12,715.35 was due and owing for merchandise sold on open account.

The trial court granted judgment in favor of plaintiff against the two corporate defendants in the sum of $12,715.35, plus interest and costs. The court dismissed the complaint against defendants Herbert and Jean Meisner personally and the plaintiff has appealed from that dismissal.

The first question raised by appellant is whether the document signed by Herbert Meisner is a valid personal guarantee for the debts of Wood Surgeons incurred by reason of the credit furnished by Hofmann.

Generally, the interpretation of a contract is a question of law for the court, Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967), and it must determine the intent of the parties from the four corners of the instrument. Richards Development Co. v. Sligh, 89 Ariz. 100, 358 P.2d 329 (1961). If the contract is ambiguous by its terms then parol evidence may be used to explain an ambiguity; but in the absence of fraud, mistake, or other contract-formation defenses, parol evidence may not be used to change, alter, or vary the express terms in a written contract. Brand v. Elledge, 101 Ariz. 352, 419 P.2d 531 (1966).

A brief description of the document is called for. At the very top of the form is the caption "Application for Credit". The form is comprised of two parts. The first part consists of a series of questions designed to elicit credit information. The second part, which is located near the bottom of the single-page form, provides as follows:

"Dated _____, 19___

"To: THE HOFMANN COMPANY and to your agent and/or assignee. For value received, the receipt of which is hereby acknowledged, and in consideration of your advancing credit to _____ _____ Debtor,

I/we, the undersigned, hereby guarantee the prompt payment to you of all amounts now due and owing or which may hereafter become due and owing to you from said debtor entity. Liability of the undersigned shall not be affected or prejudiced by the additional acceptance of a note or evidence of indebtedness, the extension of time, payment arrangement

---

1. Herbert Meisner was also president of Meisner Enterprises.

or other indulgence granted to debtor or by agreement affecting said indebtedness, and the undersigned hereby waives notice of all of the aforesaid. The filing of suit or exhaustion of collection or legal remedies against said debtor shall not be a condition precedent to the enforcement of this guarantee and the undersigned hereby expressly waive(s) demand, presentment for payment, protest, notice of protest or diligence. This guarantee shall continue until you have received a notice of termination executed by the undersigned. Should the undersigned elect to terminate this guarantee such termination shall not affect the liability of the undersigned as to accounts and amounts then owing from said debtor. In the event a collection or legal remedy is instituted against said debtor to receive payment due and owing or in the event that suit is instituted on this guarantee the undersigned hereby agrees to pay all costs and such additional sum as a Court may deem reasonable as Attorney's fees."

and is followed by the signature line where Mr. Meisner signed.

The defendants first contend that the document contains blanks which create an ambiguity as to the intention of the parties, thus invalidating the purported guarantee.

The mere fact that a signed contract contains blanks does not necessarily invalidate it. Reidy v. Almich, 4 Ariz.App. 144, 418 P.2d 390 (1966). It is only invalidated when those unfilled blanks pertain to important matters which render an agreement incomplete. Stevens v. Fanning, 59 Ill.App.2d 285, 207 N.E.2d 136 (1965). However, if the omitted information can be supplied from other parts of the writing itself then the agreement will be upheld as enforceable. 17 C.J.S. Contracts § 65 (1963); Bengimina v. Allen, Mo.App., 375 S.W.2d 199 (1964).

The blanks in the document to which defendants refer immediately precede the guarantee paragraph and pertain to the date and the name of the debtor. The omission of such, in our opinion, is not fatal to the validity of the guarantee. The name of the debtor is readily ascertainable by referring to the top portion of the document which contains the firm name, Wood Surgeons, as the party who is applying for credit.

It is perfectly clear to this court that the document is not ambiguous, that the intent of the parties is readily ascertainable, and that there is no need to resort to parol evidence. The writing is an application for credit and contains a personal guarantee by Meisner that he will personally be liable for any amount of money which Hofmann might extend in credit to the corporate entity, Wood Surgeons.

The defendants further contend that the guarantee is of no effect because of Hofmann's alleged misrepresentation. This misrepresentation appears to be in the form of the agreement as Meisner states that he thought the purpose of the document was simply an application for credit, being so designated, so he did not read it and hurriedly filled it out and signed it.

The mere fact that one does not read a contract which he has signed is not *ipso facto* grounds to invalidate the writing. Bradley v. Industrial Commission, 51 Ariz. 291, 76 P.2d 745 (1938). In *Bradley*, the court said:

"When a person . . . has carelessly signed . . . [a writing] without reading it, the mere fact that he believed it to be something else than what it was, *when such belief was not brought about by the misconduct of the other party,* furnishes no ground for the admission of parol evidence that he did not mean to execute it, for courts are not under the duty of relieving parties of the consequences of their own gross negligence." (Emphasis in original) 51 Ariz. at 299, 76 P.2d at 748.

Nor does the title of the document relieve the signer from reading it, especially when we consider the general business practice of extending credit to small corporate businesses, only upon the personal guarantee of

its officers. We therefore hold that Meisner's failure to read the document is no reason to relieve him from the consequences of his own carelessness. Furthermore, Meisner does not contend that he was told by plaintiff that he was merely signing an application for credit and not a personal guarantee in addition thereto. There is just no allegation or evidence that the contents of the document were misrepresented directly or indirectly by the plaintiff and consequently the elements of fraud are absent. Waddell v. White, 56 Ariz. 420, 108 P.2d 565 (1940). We therefore hold that Meisner personally guaranteed the indebtedness of the corporation and is personally liable therefor.

Having found that the document signed by Meisner is a valid guarantee for the credit extended by Hofmann to Wood Surgeons, we hold that it was error for the trial court to conclude that the document was only an application for credit and to dismiss the complaint against Meisner personally.

Appellant next contends that the liability created by the contract of guarantee is binding upon the marital community of Herbert and Jean Meisner because the husband was furthering a community interest when he executed the contract.

█ It is well established in this state that a debt incurred by a married man during coverture is presumed to be a community obligation and the burden of overcoming the presumption by clear and convincing evidence is on the party who contends otherwise. Donato v. Fishburn, 90 Ariz. 210, 367 P.2d 245 (1961); Osborne v. Massachusetts Bonding and Insurance Co., 229 F.Supp. 674 (D.Ariz.1964). This presumption is based on A.R.S. § 25–211, subsec. B which gives the husband the power to act as the manager of the community and on A.R.S. § 25–216, subsec. B which authorizes him to contract debts on behalf of the community. Garrett v. Shannon, 13 Ariz. App. 332, 476 P.2d 538 (1970).

█ When Herbert Meisner executed the contract of guarantee, he was married to Jean Meisner, thus giving rise to the presumption that the liability incurred was a community one. However, if the husband incurs liability by executing a note of guarantee, the community property is protected from liability if the note is not for the benefit of the community. Keplinger v. Boyett, 6 Ariz.App. 514, 433 P.2d 1006 (1967). Yet, if the husband executes such a note with the object of benefitting the community then it is binding on the community even though the wife does not sign it, nor approve of it. Ellsworth v. Ellsworth, 5 Ariz.App. 89, 423 P.2d 364 (1967).

The controlling question then which must be resolved is whether Herbert Meisner acted with the intent of benefitting the community and not whether the community did in fact benefit from the act, the position advocated by appellees. As to Meisner's intent, the appellees contend that since the stock in Wood Surgeons was the husband's sole and separate property, the purported guarantee was for the benefit of the corporation and not for the benefit of the community. The argument continues by stating that the purpose of the guarantee was to facilitate the extension of credit to the corporation and as a result, it could expand thus increasing the profits and thereby enhancing the value of the stock. The marital community would benefit only indirectly by a potential increase in salary to Meisner.

█ In determining whether Meisner intended to act for the benefit of the marital community his subjective intent should be disregarded and only the surrounding circumstances at the time of the transaction should be considered in ascertaining his objective intent. DePinto v. Provident Security Life Ins. Co., 374 F.2d 50 (9th Cir. 1967).

█ At the time the contract of guarantee was executed, Meisner, who was the sole provider of the community, was the active working president of the corporation, spending a major portion of his time and effort in the activities for which he

drew a salary of $600 per month, though not always in that amount. The credit extended by Hofmann enabled the corporation to purchase goods and supplies which were necessary to meet its commitments. In turn, Meisner's modest salary would presumably increase as the company grew and became more profitable.

Since the earnings of either spouse, while living together, are community property, A.R.S. § 25-211, subsec. A, Shaw v. Greer, 67 Ariz. 223, 194 P.2d 430 (1948), it is undeniable that execution of the guarantee which facilitated the extension of credit to the corporation was of a direct benefit to the community.

For an act to be done with the intent of benefitting the marital community, it is not necessary that the husband's primary intent be for the benefit of the community. All that is required is that some benefit was intended for the community. *See DePinto, supra.* In that case, the court stated that DePinto's services on the board of directors was beneficial to the community[2] for, among other things, "[he] had the right to vote for and receive fees for performing services as a director, even though he did not choose to do so."

In conclusion, we hold that the act of executing the guarantee was beneficial to the marital community of Herbert and Jean Meisner and the act gave rise to the presumption that a debt incurred by a married man during coverture is a community debt. The evidence introduced by the defendants was insufficient to overcome this presumption. Therefore, the liability incurred by Meisner, by virtue of Wood Surgeons' failure to pay the debt owed to Hofmann, is binding upon the community assets of the defendants.

For the foregoing reasons, the judgment of the trial court insofar as it deals with the personal liability of the Meisners is reversed and the matter remanded with directions to enter judgment in favor of Hofmann, against both of the Meisners, the judgment against Mrs. Meisner being limited to the extent of community property.

HAIRE, C. J., and EUBANK, J., concur.

---

2. Although DePinto owned no stock in the corporation on which he was serving as a director, the court held that the community property was subject to damage awards for the torts committed by DePinto while serving as a director.