**J. Carl OSBORNE et al., Plaintiffs,**

**v.**

**MASSACHUSETTS BONDING AND INSURANCE COMPANY, a Massachusetts corporation, et al., Defendants.**

**MASSACHUSETTS BONDING AND INSURANCE COMPANY, a Massachusetts corporation et al., Counterclaimants and Third-Party Plaintiffs,**

**v.**

**J. Carl OSBORNE et al., Counterdefendants and Third-Party Defendants.**

**Civ. No. 3943.**

United States District Court
D. Arizona.

March 17, 1964.

Joseph E. McGarry, Lewis, Roca, Scoville, Beauchamp & Linton, Phoenix, Ariz., for plaintiffs and counterdefendants.

William F. Haug, Jennings, Strouss, Salmon & Trask, Phoenix, Ariz., for defendants and counterclaimants.

KILKENNY, District Judge.

Plaintiffs' challenge to the right of Massachusetts Bonding to maintain an action on the indemnity agreements between the parties is premised on the failure of Massachusetts to obtain a license from the Corporation Commission under Article XIV, § 17 [1] of the Constitution of that State, A.R.S. Historically, the regulation of insurance corporations in the State of Arizona has been controlled by the Corporation Commission mentioned in Article XV, § 5 [2] and in said Article XIV, § 17.

Arizona R.S.1913,[3] § 3377, provided among other things, that the Corporation Commission should be vested with "sole power to issue certificates of incorporation to companies organized under the laws of this state, and to issue licenses to corporations to do business in this state." Said Corporation Commission was required by law to satisfy itself that the applicant, for a license to transact business, was qualified to do

1. Article XIV, § 17 (1912).
* * * "No foreign corporation shall have authority to do business in this State, until it shall have obtained from the Corporation Commission a license to do business in the State, *upon such terms as may be prescribed by law.*" * * * (Emphasis supplied)

2. Article XV, § 5 (1912).
"The Corporation Commission shall have the sole power to issue certificates of incorporation to companies organizing under the laws of this State, and to issue licenses to foreign corporations to do business in this State, as may be prescribed by law."

3. Hereafter A.R.S.

so, before issuing such applicant a certificate, A.R.S. § 3378. This certificate was made a pre-requisite to the transaction of business within the State. A.R.S. § 3381. In substantially the same form, these provisions were carried forward in the revised Code of Arizona (1928), §§ 1782, 1783, 1785 and again in the Arizona Code Annotated (1939), §§ 61–301, 61–302 and 61–304.

Provision was made for the appointment of a Director of Insurance by the Corporation Commission in Laws 1945, Chapter 100, § 2, Regular Session. The Director to have supervision, under the Commission, of the administration of all the laws relating to insurance. In 1947 the law was modified to some extent, but the Director was still in complete charge of the laws relating to insurance. Laws 1947, Chapter 125, § 2, Page 246.

In 1954 a new Insurance Code was adopted by the Arizona Legislature to take effect on January 1, 1955. Currently, A.R.S. § 20–141 et seq.[4]

Commencing with the year 1916, and throughout the years thereafter until January 1, 1955, Massachusetts filed timely applications with the insurance division of the Corporation Commission for certificates of authority to do business in the State of Arizona and received such authority. After the 1954 enactment Massachusetts Bonding filed all of its reports and paid all of its fees and performed all of the acts required of it by the Department of Insurance of the State of Arizona under certificates issued to it by the said Department. The Corporation Commission, at first, refused to accept filings or fees from foreign insurance corporations. This attitude lasted for a period of approximately one year subsequent to January 1, 1955, and since that time certain foreign insurance companies, other than Massachusetts, have made filings with, and paid fees to, both the Corporation Commission and the Department of Insurance. Since 1955 Massachusetts has made its filings, paid its fees and received an annual certificate of authority to do business in the State of Arizona, from the Department of Insurance.

To be observed is the fact that there is nothing in the Constitution, which, ipso facto, prohibits the doing of business, by insurance companies or other foreign corporations. Therefore, it must be implemented by legislation in order to be effective. This fact has been recognized by the Arizona Legislature ever since the adoption of the Constitution in 1912.

Plaintiffs' challenge is based on the claim that the 1954 legislation provided for a Department of Insurance entirely separate and distinct from, and in no manner governed by, the Corporation Commission, the licensor of all foreign corporations under the Arizona Constitution. The plaintiffs, in pursuance of this claim, find considerable comfort in the language of the Arizona Supreme Court in Williams v. Bankers National Insurance Company, 80 Ariz. 294, 297 P. 2d 344, 346 (1956), where the Court, among other things, said:

> "* * * In effect, the obvious intent of the legislature in the passage of this new insurance code was the creation of a distinct department of insurance * * *."

Assuming, without deciding, that this language of the Court was appropriate and necessary to its decision, rather than dicta,[5] as argued by Massachusetts, there is nothing in this language which even

4. "§ 20–141. *Director of Insurance; appointment, term; qualifications; salary*

A. There shall be a director of insurance who, subject to subsection E of this section, *shall be appointed by the commission*, subject to approval by the state senate. * * *"

5. "Dictum is not binding precedent, In Re Moore's Estate, 67 Ariz. 65, 190 P. 2d 914." It does not control where the precise issue is directly presented. Hernandez v. County of Yuma, 91 Ariz. 35, 369 P.2d 271.

suggests that the new Department of Insurance was equal to, or entirely separate and apart from the Corporation Commission. As I read and interpret the legislation, the Director of Insurance remains an agent of the Corporation Commission. The Legislature specifically provided that the Director of Insurance was to remain subject to the control of the Corporation Commission. The Corporation Commission had the power of appointment and only the Commission could remove him from office. The only reasonable interpretation of the legislation is that the Legislature, in its wisdom, concluded that a distinct department of Insurance was necessary and intended that such Department should be an administrative branch of the Corporation Commission, with the acts of the Director of Insurance to be viewed as the acts of the Corporation Commission itself. In construing the legislation, I am bound to place thereon a construction such as will accomplish the legislative intent, and, if possible, avoid an absurd conclusion or a construction which would render the statute invalid or unconstitutional. State v. Airesearch Manufacturing Co., 68 Ariz. 342, 206 P.2d 562.

It is a cardinal rule of statutory construction that every intendment is in favor of the constitutionality of legislation, and unless its invalidity is established beyond a reasonable doubt it will be declared constitutional. Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808. I am in complete agreement with defendants' contention that the legislature never intended that the Director of Insurance should be viewed as anything other than an agent of the Corporation Commission. It follows that the act of the Director of Insurance in issuing a certificate of authority to Massachusetts Bonding to transact business in the State, is, in truth and in fact, the act of the Corporation Commission. Plaintiffs, in deference to these decisions, concede that the 1954 legislation is not unconstitutional. They urge that Massachusetts was required by the 1954 legislation, to obtain a Certificate of Authority not only from the Director of Insurance, but also from the Corporation Commission. I find no legislation or decisional law to support this view. The only legislation requiring a license or a certificate of authority is that contained in the 1954 Act. If plaintiffs are correct, the constitutional provisions, with reference to a license, are without meaning, in that the legislature never implemented, with proper legislation, the constitutional requirement of: "such terms as may be prescribed by law". The practical interpretation as placed on this constitutional provision by the Legislature, over the course of the years, is entitled to great weight. Likewise, the practical construction placed on the 1954 legislation by the Corporation Commission and the Director of Insurance, is of assistance in arriving at the correct conclusion. United States v. Atlantic Refining Co., 360 U.S. 19, 79 S.Ct. 944, 3 L.Ed.2d 1054; United States v. Republic Steel Corp., 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903; Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389.

In the interpretation of a Constitution, the cardinal principle is to give full effect to the intent of the framers thereof. Mahoney v. Maricopa County, 49 Ariz. 479, 68 P.2d 694; Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457; City of Phoenix v. Yates, 69 Ariz. 68, 208 P.2d 1147, 1149. It is beyond intelligent argument to contend that the framers of the Constitution never intended that the Legislature should provide the machinery under which a license would be issued. The Constitutional provisions, here under scrutiny, are not self-executing. City of Phoenix v. Yates, supra. A constitutional provision is self-executing only when it is apparent that such was the intent of the framers thereof. Miller v. Wilson, 59 Ariz. 403, 129 P.2d 668, 670.

Under the facts and the law, I find that Massachusetts was authorized to do business in Arizona. Because of this conclusion, I do not reach the alternative issues with reference to the same subject.

LIABILITY OF MARITAL COMMUNITY

At the conclusion of the trial, I found that the plaintiffs were liable to the defendant, Massachusetts, on the indemnity agreements executed by them in connection with obtaining the signature of Massachusetts on the bonds in question. At the time of the execution and delivery of the indemnity agreements, four of the five plaintiffs were and still are married. The community property law of Arizona is codified in A.R.S. § 25-211, subsec. A.[6]

The joint venture agreement executed between the plaintiffs and the principal on the bond made provisions for plaintiffs participating in the profits made under the prime contract.[7]

Under Arizona law it is presumed that a debt incurred by a married man during coverture is a community obligation, and the burden of proof is on the one attempting to overcome the presumption. Donato v. Fishburn, 90 Ariz. 210, 367 P.2d 245 (1961). On the other hand, income derived solely from the separate property of the husband, without the husband's time and effort being involved in the production of that income, is separate property. Evans v. Evans, 79 Ariz. 284, 288 P.2d 775.

Cosper v. Valley Bank, 28 Ariz. 373, 237 P. 175, on which plaintiffs rely does not support their contentions. The Court, in that case, held that the community property of the husband and wife was properly subject to the judgment obtained. In Perkins v. First National Bank of Holbrook, 47 Ariz. 376, 56 P.2d 639, on which plaintiffs also rely, the Court said that the community was protected from liability on a contract of the husband as a surety for a guarantor, *unless the contract was in aid of, or for, the community.* Again, the Court held that the community was found on the suretyship contract and that the mortgage on the community property was properly foreclosed. In American Surety Co. v. Sandberg, 244 F. 701 (9 Cir.1917), the Court found there was no consideration, of value, passing to either the husband or the wife on account of the signing of the indemnity, nor was any profit anticipated. Here, as I have stated, the plaintiffs did anticipate a profit from the transaction.

The Supreme Court of Washington, a recognized authority on community property law, has stated that the presumption of community liability can be rebutted only by clear and convincing evidence. Dizard and Getty v. Damson, 387 P.2d 964 (Wash.1964).

It is my considered judgment and finding that any profits that might have been made under the joint venture would inure to the benefit of the respective communities and would be community property. This finding points to liability of the communities under the indemnity agreement. Any other finding is not justified under the facts as presented and the law as applied thereto.

Counsel for Massachusetts shall draft findings and conclusions conforming to my statement from the Bench and this Opinion.

6. All property acquired by either husband and wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children while she lives separate and apart from the husband, is the community property of the husband and wife.

7. No. 5. The purpose of this agreement is to provide a method whereby joint adventurers shall contribute to the operating funds of contractor, shall arrange to lend their credit in order that contractor may secure the necessary performance and payment bond and shall as a result thereof *share in the profits*, if any, to be derived from carrying out the aforesaid contract. (Emphasis supplied).