499 P.2d 179

**Robert H. FENDLER, Appellant,**

**v.**

**TEXACO OIL COMPANY and The Chris-Town Company, Appellees.**

**No. I CA–CIV 1846.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 20, 1972.

Rehearing Denied Aug. 24, 1972.

Kriehn & Rowe, by Gerald E. Kriehn,. Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, by Jolyon: Grant, Phoenix, for appellee, The Chris-Town Co.

Burch, Cracchiolo, Levie, Guyer & Weyl by Kenneth C. Weyl, Phoenix, for appellee- Texaco Oil Co.

JACOBSON, Judge.

This appeal raises the question of wheth-er the trial court properly granted defend-ants' motions for summary judgment.

In April, 1971, the wife of plaintiff-ap-pellant, Robert H. Fendler, entered the parking lot of defendant-appellee, The Chris-Town Company (Chris-Town) and parked the family automobile, a 1970, Chrysler Imperial, in front of a "No Park-ing" sign and parallel to a curb next to one- of the shops. The car was parked in be-tween two other vehicles which were also, parked in violation of the "No Parking"' sign. During Mrs. Fendler's absence, a se-curity guard employed by Chris-Town- called defendant Charles Swinford, who, operated a towing service in connection- with his Texaco service station and busi-ness and told him to tow away the illegally- parked vehicles. Two of the three vehicles. were removed by Swinford and the driver- of the third one removed it himself.

Approximately one hour later Mrs. Fen-dler returned to the spot where she had parked her automobile, and she was ad--

vised by the security guard as to what happened to the vehicle.

Upon arriving at the Texaco service station and demanding the return of her automobile, Mrs. Fendler was told by Swinford that the $20.80 towing charge would have to be paid before the car would be released. Mrs. Fendler tendered a personal check and a friend, accompanying her, tendered a Texaco credit card in payment of the charges but both tenders were refused because the operator wanted cash.

The next day, Mr. Fendler filed a complaint, alleging a conversion of his automobile and named as defendants the following parties: Charles Swinford and his wife, Texaco Oil Company (Texaco), The Chris-Town Company, the twenty-one limited partners of The Chris-Town Company, and State Farm Mutual Automobile Insurance Company. The prayer for relief included, among other items and amounts, $6,000 for compensatory damages and $50,000 for punitive damages.

The trial court granted defendants' Swinford, Texaco and Chris-Town motions for summary judgments; and in addition, granted defendants' State Farm and the twenty-one limited partners, motions to dismiss the plaintiffs' claims as to them. Plaintiff appealed from the summary judgments and the orders of dismissal.

Defendants filed motions in this court to dismiss the appeal as to all five parties. On December 22, 1971, Department A of this court entered an order denying appellees' Chris-Town and Texaco motions to dismiss because the judgments appealed from were final. But the court granted the motions to dismiss the appeal filed by Swinford, State Farm, and the twenty-one limited partners as the appeal was premature in that the respective judgments and orders did not contain Rule 54(b) language —"that there is no just reason for delay."

The order concluded by stating "as to those orders this Court is without jurisdiction."[1]

Plaintiff did not seek review of that order of dismissal and therefore only Chris-Town and Texaco remain as appellees in this appeal. We cannot consider appellant's contentions regarding the dismissed defendants.

Appellant initially contends that the trial court erred by granting defendant Chris-Town's motion for summary judgment because material issues of fact existed, namely:

(1) Whether the act of towing away plaintiff's car constituted an act of conversion?

(2) Whether the Phoenix City Code[2] relied upon by Chris-Town is applicable?

■ In order for a moving party to be entitled to summary judgment, a twofold test must be satisfied. First, there must be no genuine issue as to any material facts and second, the party must be entitled to judgment as a matter of law. Rule 56(c), Rules of Civil Procedure, 16 A.R.S.; Hensley v. Town of Peoria, 14 Ariz.App. 581, 485 P.2d 570 (1971).

■ The material facts set forth in this opinion are not disputed. What is disputed is the legal conclusion to be drawn therefrom. Resolution of such questions is for court decision and not for the trier of fact. *See* Bowen v. Cowett, 216 Cal.App.2d 766, 31 Cal.Rptr. 184 (1963).

The gravamen of plaintiff's complaint is that Chris-Town, along with others, engaged in conduct which constituted a conversion of his automobile. A conversion has been defined as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." Shartzer v. Ulmer, 85 Ariz. 179, 333 P.2d 1084 (1959). The "es-

---

1. That order is in accord with our recent opinion in Tarnoff v. Jones, 17 Ariz.App. 240, 497 P.2d 60 (1972), which discusses the pertinent part of Rule 54(b), Rules of Civil Procedure, 16 A.R.S., involved in the order of Department A.

2. Section 36–144 of the Phoenix City Code is set out in full later in the text of the opinion.

sence of conversion is the wrongful deprivation of the property from the owner." United Bonding Ins. Co. v. Swartz, 12 Ariz.App. 197, 199, 469 P.2d 89, 91 (1970); *cf.* Markel v. Transamerica Title Ins. Co., 103 Ariz. 353, 442 P.2d 97, cert. den., Phoenix Title & Trust Co. v. Markel, 393 U.S. 999, 89 S.Ct. 484, 21 L.Ed.2d 463 (1968).

It is plaintiff's contention that Chris-Town's participation in the wrongful removal of his automobile from the parking lot resulted in conversion. Chris-Town, on the other hand, argues that it had the right to remove the vehicle and hence the removal was not wrongful and thus not a conversion, relying in part on § 36–144 of the Phoenix City Code (1969), which states:

> "No person shall park a vehicle in any private driveway or on private property or private parking areas without the express or implied consent of the owner or person in lawful possession of such property. (Code 1962, § 37–50.13.)"

Plaintiff advances three reasons why the above section should not apply. First, the section does not apply to persons who park with the owner's implied consent, and according to plaintiff, his wife had such implied consent by virtue of Chris-Town's failure to enforce the parking restrictions.

The proof offered by plaintiff in support of the implied consent theory was merely Mrs. Fendler's affidavit which alleged that during her four years of shopping at the center she had never observed any enforcement of Chris-Town's no parking restrictions. Chris-Town countered this allegation with statistical data showing that during the first four months of 1971 it towed away 195 illegally parked vehicles, three of which occurred during the day in question.

■ Mrs. Fendler's affidavit, that she had never witnessed any enforcement of the parking restrictions, especially where her opportunities for observation were lim-

ited to the occasions when she shopped at Chris-Town, must be considered as negative evidence. Under these circumstances, the oft-cited rule that "mere testimony by a witness that he did not see or hear an event occur has, *in and of itself*, no probative force sufficient to prove that the event did not occur" is dispositive. Udall, Arizona Law of Evidence, § 112, P. 210 (1960) (author's emphasis). This, coupled with positive evidence that removal was enforced when practical, destroys plaintiff's issue of implied consent as a triable issue of fact.

■ Plaintiff's second reason for contending § 36–144 of the Phoenix City Code is not applicable is that the parking area in question is "for all practical purposes public property" and removal of vehicles from public areas can only be undertaken by public officials. As authority for this proposition, appellant cites two cases: Olsen v. Macy, 86 Ariz. 72, 340 P.2d 985 (1959) and Amalgamated Food Emp. Union Local 590 v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). *Olsen* deals with the duty of a landowner to keep a sidewalk in front of his business premises in safe repair when the landowner had permitted the public to establish a way across it under such circumstances as to induce a belief that the sidewalk was public in character. We find nothing in this case to support plaintiff's theory that the Chris-Town Shopping Center is "public property." The Logan Valley Plaza case deals with First Amendment guarantees regarding the right of persons to enter a privately owned shopping center to engage in picketing of a store therein as part of a labor controversy. Again, nothing in this case supports the "public property" argument in the context before the court.[3]

Needless to say, appellant's makeweight arguments are not supported by any apposite authority and a detailed discussion of

---

3. Recently, the United States Supreme Court re-examined and narrowed the "public property" concept of Logan Valley Plaza in Lloyd Corp., Ltd. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed. 2d 131 (June 22, 1972).

it is not warranted. The question raised as to the public character of the property in question is a legal one which, in our opinion, was correctly decided by the trial court.

The third reason advanced by appellant dealing with the applicability of Section 36–144 of the Phoenix City Code is that Section 36–7 of the same code provides the exclusive means by which city code violations shall be enforced. Section 36–7 states:

"The Police Department shall take in charge, remove and keep in custody, under the direction of the Chief of Police, any unoccupied vehicle of any kind or description *found violating any of the provisions of this Code,* or of any of the ordinances of the City of Phoenix or the laws of the State of Arizona regulating the standing or parking of vehicles." (Code 1962, § 37–2.05.)" (Emphasis added.)

Appellant contends that only the police department of the City of Phoenix may impound vehicles found violating the city code, and hence impounding by a private party is a conversion.

Again, plaintiff's "exclusive enforcement" argument does not involve any factual issues but deals exclusively with the interpretation of a municipal code provision, clearly a legal issue for the trial court's determination. Kuts-Cheraux v. Wilson, 71 Ariz. 461, 229 P.2d 713 (1951), Supp. 72 Ariz. 37, 230 P.2d 512 (1951).

The fallacy in plaintiff's argument lies in the assumption that no other statutes have any bearing on the matter. The statutory authority delegating to local authorities the power to regulate motor vehicles under their jurisdiction is provided for in the Uniform Act Regulating Traffic on Highways, A.R.S. § 28–627, which in part provides:

"A. The provisions of this chapter shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from:

"1. Regulating the standing or parking of vehicles."

It is Chris-Town's position that §. 36–7 of the Phoenix City Code is thus made subordinate to the provision of the Uniform Act, A.R.S. § 28–626, which provides:

"The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and *no local authority shall enact or enforce any ordinance, rule or regulation in conflict with the provisions of this chapter* unless expressly authorized by this chapter. Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this chapter." (Emphasis added.)

Further, appellee argues that § 36–7 of the Phoenix City Code if construed in accordance with appellant's contention would be in conflict with a provision of the Uniform Act, A.R.S. § 28–628 which provides:

"Nothing in this chapter shall be construed to prevent the owner of real property used by the public for purposes of vehicular travel by permission of the owner and not as a matter of right from prohibiting that use, or from requiring other or different or additional conditions than those specified in this chapter, *or otherwise regulating such use as may seem best to such owner.*" (Emphasis added.)

Section 36–7 would be in apparent conflict with the above state statute if it purports to vest with the police department the *exclusive* power to remove vehicles found violating *any* provisions of the ordinance of the City of Phoenix *or* "the laws of the State of Arizona regulating . . . parking of vehicles."

■ However, courts will avoid declaring a city ordinance invalid as being in conflict with a state enactment if a reasonable interpretation of the ordinance will avoid such a conflict. *See* Arizona Foundation for Neurology & Psychiatry v. Sienerth, 13 Ariz.App. 472, 477 P.2d 758 (1970); Osborne v. Massachusetts Bonding and Insurance Co., 229 F.Supp. 674 (D.Ariz.1964). In our opinion, § 36–7 of the Phoenix code is merely an authorization to the Phoenix Police Department to enforce its traffic code. It does not purport to vest enforcement of that code exclusively in that department and we will not read such exclusiveness into it, if to do so would void the ordinance. We hold that § 36–7 of the Phoenix code *does not divest the right of a private owner to enforce conduct on his premises consistent with A.R.S. § 28–628.*

■ In our opinion, the language of § 28–628 permits an owner to do exactly what Chris-Town has done, that is, to post "No Parking" signs on its property and to tow away any vehicles found to be in violation of those restrictions. This practice is a form of reasonable regulation, deemed necessary by Chris-Town, to provide for the safety of its patrons and to guard against inconveniences to others. The practice is in harmony with the plain meaning of the statute.

We hold, therefore, that Chris-Town's removal of plaintiff's automobile was not a wrongful taking, and hence, the trial court correctly determined that no conversion resulted from that act.

■ Lastly, appellant contends that the removal of his automobile was a taking of property without notice or an opportunity to be heard, an act violative of the due process clause of the Fourteenth Amendment to the Federal Constitution. His argument rests on the pillar of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.

Ct. 1820, 23 L.Ed.2d 349 (1969). *Sniadach* stands for the proposition that a prejudgment garnishment of wages without notice and a prior hearing is violative of the due process clause. Appellant urges that *Sniadach* be extended to all prejudgment attachment situations, including the instant case. We, of course, are not dealing here with a prejudgment attachment situation, rather we have before us the right of a private landowner to reasonably control the traffic of its invitees. By no stretch of the imagination is *Sniadach* applicable to this type of situation and we so hold.

Finding no merit in appellant's due process contention, we hold that the removal of the automobile by Chris-Town was not in any way a constitutionally defective act.

■ Turning now to defendant Texaco, appellant maintains that Texaco is vicariously liable for the tortious conduct of Swinford on the grounds that a principal-agent relation exists between the two. Aside from the fact that Texaco's liability, if any, is dependent upon the liability of Swinford who is not before us and who has been, at least for the time being, found by the trial court not to be liable, we turn to the only case relied on by plaintiff in support of his theory of liability. Plaintiff relies solely upon Gizzi v. Texaco, Inc., 437 F.2d 308 (3rd Cir. 1971), which holds that questions of an agent's apparent or ostensible authority are factual questions for the jury's determination.

An examination of the factual setting of Gizzi v. Texaco, Inc., *supra,* belies appellant's reliance upon the case. In *Gizzi*, appellant purchased a used automobile from a Texaco service station operator, who had repaired the brakes on the vehicle. On the same day that appellant had taken possession of the car, he was injured in an accident when the brakes failed.

The theory of liability advanced by appellant Gizzi was that Texaco had clothed its operator with apparent authority to

make repairs and sell the vehicle on its behalf. Furthermore, Gizzi had entered into the transaction reasonably relying on this apparent authority, and therefore Texaco was estopped from denying the existence of an agency relationship.

In summarizing the applicable rules of law, the circuit court stated:

"The concepts of apparent authority, and agency by estoppel are closely related. Both depend on manifestations by the alleged principal to a third person, and reasonable belief by the third person that the alleged agent is authorized to bind the principal. The manifestations of the principal may be made directly to the third person, or may be made to the community, by signs or advertising. (Citation omitted.) In order for the third person to recover against the principal, *he must have relied* on the indicia of authority originated by the principal . . . and such reliance must have been reasonable under the circumstances." 437 F.2d at 309 (Emphasis added.)

Upon comparing the facts in *Gizzi* with the instant case, the following is immediately clear: Assuming, without deciding that Texaco may have clothed both operators with apparent or ostensible authority, the element of reliance by the third person which is present in *Gizzi* is totally lacking in the present case. Neither of the Fendlers relied upon any representations made by Texaco. Having advanced no other theory in support of Texaco's liability, we hold that the trial court correctly decided that no triable issue of fact existed and Texaco was entitled to judgment as a matter of law.

For the foregoing reasons, the judgments in favor of Chris-Town and Texaco are affirmed.

HAIRE, C. J., Division 1, and EUBANK, J., concur.