653 P.2d 1

Ariel M. BOWCUT and Opal C. Bowcut,
husband and wife,
Plaintiffs/Appellants,

v.

John JAARSMA and Nellie Jaarsma, hus-
band and wife; unknown heirs, if any,
of John Jaarsma and unknown heirs, if
any, of Nellie Jaarsma, Defendants/Ap-
pellees.

CONTINENTAL SERVICE CORPORA-
TION, a corporation, Third Party
Plaintiff/Appellant,

v.

Ariel M. BOWCUT and Opal C. Bowcut,
husband and wife, Plaintiffs/Appellees,

and

John Jaarsma and Nellie Jaarsma, hus-
band and wife; unknown heirs, if any,
of John Jaarsma and unknown heirs, if
any, of Nellie Jaarsma, Defendants/Ap-
pellees.

No. 15825.

Supreme Court of Arizona,
In Division.

Sept. 27, 1982.

Rehearing Denied Nov. 2, 1982.

**545**

Gibson & Valentic by Franklin K. Gibson, Mesa, for Bowcut.

Jennings, Strouss & Salmon by Thomas J. Trimble and Allen D. Butler, Phoenix, for Continental Service Corp.

Wolfinger & Lutey by H.J. Wolfinger, Prescott, for Jaarsma.

HAYS, Justice.

In 1962, Ariel M. and Opal C. Bowcut (hereinafter "sellers") sold a dairy consisting of real property, cattle and equipment to John and Nellie Jaarsma (hereinafter "buyers"). The parties executed escrow instructions with Guarantee Title and Trust Company [1] in March of 1962 for the sale of the property at a price of $110,000. In April the parties signed an agreement for sale which required a down payment of $50,000 with the remaining $60,000 to be paid in monthly installments to sellers through the escrow company.

On September 19, 1977, the escrow company, Continental Service Corporation (hereinafter "Continental") sent buyers a Notice of Strict Performance indicating that one payment of $501.16 and a "past due service fee" were in arrears. Sellers had requested Continental to send the notice because buyers had become repeatedly delinquent in paying their installments which were due on the 18th day of each month. On October 14, 1977, buyers paid $500, representing the September 1977 installment. The October, November and December 1977 installments were paid on December 19, 1977. The January, February and March 1978 installments were paid on April 12, 1978. The April, May and June 1978 installments were paid on June 30, 1978. Thus, despite receipt of the Notice of Strict Performance, buyers continued for nine months to make delinquent installment payments. After the June 30, 1978 pay-ment, buyers made no additional payment from July 1978 through March 1979.

In March 1979 sellers requested Continental to institute forfeiture proceedings. Continental refused for two reasons. First, because the sale included personal property, Continental said it was unable to calculate the portion of the sales price allocable to the real and personal property. Because it could not determine what portion of the real-property purchase price had been paid, it could not calculate the applicable grace period under A.R.S. § 33–741.[2] Second, personal property could not be forfeited under the real estate forfeiture procedure.

Buyers again made no payment prior to the April 18, 1979 payment due date. Because no payment had been received for ten months, sellers, through their attorney, mailed a Notice of Forfeiture on April 19, 1979. The April 19, 1979 notice stated in pertinent part:

"This forfeiture is based upon the buyers [sic] failure to pay those installments of $500.00 becoming due on the 18th day of July, 1978, and a like sum on the 18th day of each month thereafter.

"That by reason of the foregoing the buyers have been in default in their payments since July 18, 1978, plus any unpaid taxes due on said realty, if any.

"The Notice is given pursuant to the terms and provisions of Arizona Revised Statutes section 33–741 and the above numbered escrow and the aforesaid agreement...."

Prior to or on May 10, 1979 Continental received from buyers a check dated April 25, 1979 in the amount of $4,012.00. However, the amount of the check was insufficient to bring the account current, and Continental returned it. At the same time, Continental requested a check for $5,516.60 representing ten past-due payments plus the upcoming May 18, 1979 payment.

On May 10, 1979 buyers delivered a check for $6,524.35 to Continental. That same day Continental informed sellers' attorney that the check had arrived. The attorney

**1.** Continental Service Corporation succeeded to the interest of Guarantee Title and Trust Company.

**2.** Section 33–741 was renumbered as 33–742 and amended in 1981.

verbally instructed Continental not to accept the check and confirmed this instruction in a letter dated May 11, 1979.

Sellers brought an action to quiet title. Buyers counterclaimed to set aside the forfeiture and joined Continental as a third-party defendant alleging the failure of Continental to protect buyers in the forfeiture proceeding. Continental cross-claimed against buyers.

The trial judge dismissed all complaints with prejudice and ordered each party to bear its own costs and attorney fees. He ordered the reinstatement of the sales contract pending payment by the buyers of $6,524.35.

Sellers and Continental appealed the decision of the trial court. We have jurisdiction pursuant to A.R.S. § 12–2101 and 17A A.R.S., Rules of Civil Appellate Procedure, rule 19(e).

Two issues are presented on appeal.

1. Was sellers' forfeiture notice sufficient to terminate automatically buyers' rights under the sales contract?

2. Was Continental entitled to indemnification for its attorney fees?

Additional facts pertinent to the resolution of these issues will be discussed as necessary.

FORFEITURE

Sellers maintain that former A.R.S. § 33–741 permits a seller to effect a forfeiture by so notifying the buyer without giving the buyer additional time to remedy the default through payment. Section 33–741 provides:

"A. Forfeiture of the interest of a purchaser in default under a contract for conveyance of real property may be enforced only after expiration of the following periods after the default:

"1. When the purchaser has paid less than twenty per cent of the purchase price, thirty days.

"2. When the purchaser has paid twenty per cent, or more, but less than thirty per cent of the purchase price, sixty days.

"3. When the purchaser has paid thirty per cent, or more, but less than fifty per cent of the purchase price, one hundred and twenty days.

"4. When the purchaser has paid fifty per cent, or more, of the purchase price, nine months."

■ The grace periods defined in the statute run from the date of default and not from the date of the termination notice. *Glad Tidings Church of America v. Hinkley,* 71 Ariz. 306, 226 P.2d 1016 (1951); *Alger v. Brighter Days Mining Corp.,* 63 Ariz. 135, 160 P.2d 346 (1945). Thus, after the requisite period of time under the statute had passed without a single payment being made, the property was subject to forfeiture. In the instant case, ten months had passed without payment from buyers. Under the statute, sellers were not required to grant additional time in which to redeem the property after the notice of forfeiture.

■ In the instant case, however, our inquiry does not end with the statute. Sellers and buyers executed two separate contracts anticipating or relating to the sale of a dairy farm—Escrow Instructions and an Agreement for Sale. The sellers and buyers executed Escrow Instructions on March 27, 1962. The Escrow Instructions provided in pertinent part:

"26. If Buyer is in default under such agreement, Seller may . . . enforce a forfeiture thereof in any lawful manner, including but not limited to, forfeiture by notice as hereinafter provided, but only after the expiration after such default of the following periods [which are the same time periods as listed in A.R.S. § 33–741].

. . . .

"28. If Seller elects to forfeit such agreement by notice, . . . Escrow Agent shall, within three days thereafter, send a copy of said declaration to Buyer . . . . If Buyer fails to comply with the terms of such agreement to the date of such compliance before the expiration of ten days from the date said copy was deposited in the United States mail . . . Escrow Agent is authorized to deliver to Seller the documents and money deposited under these instructions or under such agreement."

Thus, under the terms of the Escrow Instructions, buyers had ten days from the date the written declaration of forfeiture

was mailed to comply with the terms of the agreement.

The Agreement for Sale executed by sellers and buyers on April 17, 1962, stated in pertinent part:

"Should Buyer default in making any payment, or in fulfilling any obligation hereunder, Seller may, . . . enforce a forfeiture of the interest of Buyer, in any lawful manner, including but not limited to forfeiture by notice as provided in the escrow instructions or supplemental escrow instructions. . . ."

Sellers maintain that the language of the Agreement for Sale read in conjunction with the Escrow Instructions—"including, but not limited to forfeiture by notice"—means that the seller shall not be limited to the method of forfeiture by notice provided in the escrow instructions as long as the forfeiture is carried out by the seller in any lawful manner. We agree.

The sellers had a Notice of Strict Performance sent to the buyers and, after the statutory period, A.R.S. § 33–741, notified the buyers as to the forfeiture. This was in conformity with the Agreement of Sale.

INDEMNIFICATION

■ The trial court ordered each party to pay its own costs and attorney fees. Continental appeals that portion of the judgment denying its claim for costs and attorney fees, and argues that it has a contractual right to indemnification from buyers and sellers.

Continental points to the provision in the Agreement for Sale signed by buyers and sellers on April 17, 1962 which states in pertinent part:

"Seller and Buyer, and each of them, promise to pay promptly, and to indemnify and hold harmless Escrow Agent against all costs, damages, attorney fees, expenses and liabilities which, in good faith, and without fault on its part, it may incur or sustain in connection with this agreement and in connection with any court action arising out of this agreement."

Continental also quotes a portion of paragraph 9 of the Escrow Instructions signed by buyers and sellers on March 27, 1962, which provides:

"Seller and Buyer will indemnify and save harmless Escrow Agent against all costs, damages, attorney's fees, expenses and liabilities, which it may incur or sustain in connection with these instructions or the escrow or any court action arising therefrom and will pay the same upon demand."

The trial court made Findings of Fact and Conclusions of Law. The Conclusions of Law relating to Continental's duties to the buyers and sellers were:

"1. CONTINENTAL SERVICE CORPORATION was within its rights in not conducting a forfeiture on behalf of the BOWCUTS.

"2. CONTINENTAL SERVICE CORPORATION had no obligation to JAARSMAS to conduct a forfeiture by notice on behalf of the BOWCUTS."

Continental contends it was not at fault and is therefore entitled to indemnification for its costs and attorney fees.

Unless a trial court's findings of fact are clearly erroneous, an appellate court is bound by them. *Kazal v. Kazal,* 98 Ariz. 173, 178, 402 P.2d 1001, 1004 (1965). However, legal conclusions drawn from the facts are subject to review. *See Bennett v. Baker's Estate,* 27 Ariz.App. 596, 557 P.2d 195 (1976); *Fendler v. Texaco Oil Co.,* 17 Ariz. App. 565, 499 P.2d 179 (1972). We do not agree that Continental was within its rights in not conducting a forfeiture.

In its brief, Continental relies heavily on the previously cited portions of the Escrow Instructions and the Agreement for Sale to support its claim to a contractual right to attorney fees. Continental, however, ignores paragraph 28 of the Escrow Instructions which states:

"If Seller elects to forfeit such agreement by notice, Seller shall do so through Escrow Agent by delivering to Escrow Agent a written declaration of forfeiture directed to Buyer together with Escrow Agent's established fee for services rendered in connection with forfeitures. *Escrow Agent shall, within three days thereafter, send a copy of said declaration to Buyer* in the manner provided herein for the mailing of Notices, Demands or Declarations. If Buyer fails to comply

with the terms of such agreement to the date of such compliance before the expiration of ten days from the date said copy was deposited in the United States mail as herein provided, Escrow Agent is authorized to deliver to Seller the documents and money deposited under these instructions or under such agreement." (Emphasis added). .

According to this provision, Continental, as the escrow agent, has a contractual obligation to forward the declaration of forfeiture to the buyer within three days after receiving instructions from the seller. Continental refused to forward a notice of forfeiture because, according to Continental, it was impossible to determine what portion of the purchase price applied to the real property.

Special instructions were attached to the escrow instructions. These special instructions provided for Bills of Sale covering all the personal property located on the premises.

"ITEM 43:

"A Bill of Sale covering all cattle, 98 head cows, 33 head heifers and 3 bulls, will be given to Buyer at close of escrow. Also, dairy milk base # 3187 will be transferred to Buyer at the close of escrow by Seller executing the proper instruments outside of escrow. .

"HOWEVER, the Bill of Sale on dairy equipment and the following items will be retained by Escrow Agent and delivered to Buyer when the Agreement for Sale has been paid in full:

| | | |
|---|---|---|
| 2 Ford Tractors | harrows | 7500 W. Power Plant |
| 2 Scrapers | float | |
| mower | rake | |
| plow | 3 trailers | . " |

The Bill of Sale contained in the record indicates the parties agreed on a price to cover the transfer of ownership of the following items of personal property: tractors, scrapers, mower, plow, harrows, float, rake, trailers, 7500 W. power plant. If the personal property could be valued for purposes of Bills of Sale, it could be valued for determining what portion of the sales price applied to personal property. Even were we to accept Continental's contention that it was impossible to determine precisely the value of the remaining personal property (cattle), the fact remains that at the time sellers requested Continental to forward a Notice of Forfeiture, buyers had already paid the principal to the extent of 69%[3] of the purchase price. Under former A.R.S. § 33–741, the *longest* grace period available to a purchaser who has paid fifty per cent of the purchase price was nine months. In all likelihood, the value of the remaining personal property (cattle) did not exceed 19% of the total property value—real and personal. In any event, nothing precluded Continental from selecting the longest grace period available and forwarding the notice as required by the Escrow Instructions. "An escrow agent is held to strict compliance with the terms of the escrow agreement, and is liable for all damages resulting from any deviation." *Tucson Title Insurance Co. v. D'Ascoli*, 94 Ariz. 230, 383 P.2d 119 (1963); *Malta v. Phoenix Title & Trust Co.*, 76 Ariz. 116, 259 P.2d 554 (1953).

Continental's second reason for refusing to forward the notice of forfeiture was that the forfeiture statute, former A.R.S. § 33–741[4] applied only to real property. We agree that personal property was not subject to forfeiture under the statute. This statutory provision, however, did not preclude Continental from carrying out its contractual obligation with respect to the real property which was the subject of the escrow instructions. We uphold the decision

---

**3.** The remaining principal to be paid was $34,-163.17 or 31%. 69% of the $110,000 purchase price had already been paid.

**4.** Section 33–741 as renumbered and amended provides for the forfeiture of personal property. Present § 33–742(B) provides:

"B. The interest of a purchaser in any personal property included in a contract is subject to forfeiture or foreclosure in the same manner as the real property, except that forfeiture or foreclosure does not affect or impair the rights of a holder of a security interest whose interest in the personal property is not subordinate to that of the seller."

of the trial court dismissing Continental's claim for costs and attorney fees.

Remanded for proceedings consistent with the foregoing opinion.

GORDON, V.C.J., and CAMERON, J., concur.